## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| and | ) |
| | ) |
| STATE OF CONNECTICUT, | ) |
| | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) |
| | ) |
| AMC ENTERTAINMENT HOLDINGS, INC. | ) |
| | ) |
| and | ) |
| | ) |
| SMH THEATRES, INC., | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

## FINAL JUDGMENT

WHEREAS, Plaintiffs United States of America and the State of Connecticut filed their

Complaint on December 15, 2015, the Plaintiffs and Defendants, AMC Entertainment Holdings,

Inc. ("AMC"), and SMH Theatres, Inc., ("Starplex Cinemas"), by their respective attorneys,

have consented to the entry of this Final Judgment without trial or adjudication of any issue of

fact or law, and without this Final Judgment constituting any evidence against or admission by

any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final

Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the Defendants to assure that competition is not substantially lessened;

AND WHEREAS, Plaintiffs require Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to Plaintiffs that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I.  <u>JURISDICTION</u>

This Court has jurisdiction over the subject matter of and each of the parties to this action.  The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## II.  <u>DEFINITIONS</u>

As used in this Final Judgment:

A.      "Acquirer" or "Acquirers" means the entity or entities to which Defendants divest the Divestiture Assets.

B.      "AMC" means AMC Entertainment Holdings, Inc., a Delaware corporation with its headquarters in Leawood, Kansas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C.      "Starplex Cinemas" means Starplex Cinemas, Inc., a Texas Corporation with its headquarters in Dallas, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

D.      "Divestiture Assets" means the following theatre assets:

|   | Theatre | Address |
|---|---------|---------|
| 1 | Starplex Town Center Plaza 10 | 319 Route 130 North, East Windsor, NJ 08520 |
| 2 | Starplex Berlin 12 | 19 Frontage Rd, Berlin, CT 06037 |

The term "Divestiture Assets" also includes:

1.      All tangible assets that comprise the business of operating theatres that exhibit first-run, commercial movies, including, but not limited to real property and improvements, research and development activities, all equipment, fixed assets, and fixtures, personal property, inventory, office furniture, materials, supplies, and other tangible property and all assets used in connection with the Divestiture Assets; all licenses, permits, and authorizations issued by any governmental organization relating to the Divestiture Assets; all contracts (including management contracts), teaming arrangements, agreements, leases, commitments, certifications, and understandings relating to the Divestiture Assets, including supply agreements (provided however, that supply agreements that apply to all of each Defendant's theatres may be excluded from the Divestiture Assets, subject to the transitional agreement provisions specified in Section IV (E)); all customer lists (including loyalty club data at the option of the Acquirer(s), copies of which may be retained by Defendants at their  option), contracts, accounts, and credit

records relating to the Divestiture Assets; all repair and performance records and all other records relating to the Divestiture Assets; and

2.      All intangible assets relating to the operation of the Divestiture Assets, including, but not limited to all patents, licenses and sublicenses, intellectual property, copyrights, trademarks, trade names, service marks, service names, (provided however, that the name Starplex, and any registered service marks of Starplex may be excluded from the Divestiture Assets, subject to the transitional agreement provisions specified in Section IV(E)), technical information, computer software and related documentation (provided however, that Defendants' proprietary software may be excluded from the Divestiture Assets, subject to the transitional agreement provisions specified in Section IV(E)), know-how and trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, all research data concerning historic and current research and development, quality assurance and control procedures, design tools and simulation capability, all manuals and technical information Starplex Cinemas provides to their own employees, customers, suppliers, agents, or licensees (except for the employee manuals that Starplex provides to all its employees), and all research data concerning historic and current research and development.

E.      "Landlord Consent" means any contractual approval or consent that the landlord or owner of one or more of the Divestiture Assets, or of the property on which one or more of the Divestiture Assets is situated, must grant prior to the transfer of one of the Divestiture Assets to an Acquirer.

### III. **APPLICABILITY**

A.      This Final Judgment applies to AMC and Starplex Cinemas, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.      If, prior to complying with Sections IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment.  Defendants need not obtain such an agreement from the Acquirer(s) of the assets divested pursuant to this Final Judgment.

### IV. **DIVESTITURES**

A.      Defendants are ordered and directed, within thirty (30) calendar days after the filing of the Complaint in this matter to divest the Divestiture Assets in a manner consistent with this Final Judgment to one or more Acquirer(s) acceptable to the United States in its sole discretion (after consultation with the State of Connecticut, as appropriate).  The United States, in its sole discretion, may agree to one or more extensions of this time period, not to exceed thirty (30) calendar days in total, and shall notify the Court in such circumstances. Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

B.      In accomplishing the divestitures ordered by this Final Judgment, Defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Assets.  Defendants shall inform any person making an inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment.  Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and

documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privilege or work-product doctrine.  Defendants shall make available such information to the Plaintiffs at the same time that such information is made available to any other person.

       C.      Defendants shall provide the Acquirer(s) and the United States information relating to the personnel involved in the operation and management of the applicable Divestiture Assets to enable the Acquirer(s) to make offers of employment.  Defendants shall not interfere with any negotiations by the Acquirer(s) to employ or contract with any employee of any Defendant whose primary responsibility relates to the operation or management of the applicable Divestiture Assets being sold by the Acquirer(s).

       D.      Defendants shall permit prospective Acquirer(s) of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

       E.      In connection with the divestiture of the Divestiture Assets pursuant to Section IV, or by a trustee appointed pursuant to Section V, of this Final Judgment, at the option of the Acquirer(s), Defendants shall enter into a transitional supply, service, support, and use agreement ("transitional agreement"), of up to 120 days in length, for the supply of any goods, services, support, including software service and support, and reasonable use of the name AMC, the name Starplex, and any registered service marks of AMC or Starplex, that the Acquirer(s) request for the operation of the Divestiture Assets during the period covered by the transitional agreement. At the request of the Acquirer(s), the United States in its sole discretion (after consultation with

the State of Connecticut, as appropriate), may agree to one or more extensions of this time period

not to exceed six (6) months in total.  The terms and conditions of the transitional agreement

must be acceptable to the United States in its sole discretion (after consultation with the State of

Connecticut, as appropriate).  The transitional agreement shall be deemed incorporated into this

Final Judgment and a failure by Defendants to comply with any of the terms or conditions of the

transitional agreement shall constitute a failure to comply with this Final Judgment.

     F.     Defendants shall warrant to the Acquirer(s) of the Divestiture Assets that each

asset will be operational on the date of sale.

     G.     Defendants shall not take any action that will impede in any way the permitting,

operation, or divestitures of the Divestiture Assets.

     H.     Defendants shall warrant to the Acquirer(s) that there are no material defects in

the environmental, zoning, or other permits pertaining to the operation of the Divestiture Assets.

Following the sale of the Divestiture Assets, Defendants will not undertake, directly or

indirectly, any challenges to the environmental, zoning, or other permits relating to the operation

of the Divestiture Assets.

     I.     Unless the United States otherwise consents in writing, the divestitures made

pursuant to Section IV, and/or by a trustee appointed pursuant to Section V of this Final

Judgment, shall include the entire Divestiture Assets and shall be accomplished in such a way as

to satisfy the United States, in its sole discretion (after consultation with the State of Connecticut,

as appropriate) that the Divestiture Assets can and will be used by the Acquirer(s) as part of a

viable, ongoing business of operating theatres that exhibit first-run, commercial movies.

Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in

each instance it is demonstrated to the sole satisfaction of the United States (after consultation

with the State of Connecticut, as appropriate) that the Divestiture Assets will remain viable and

the divestiture of such assets will remedy the competitive harm alleged in the Complaint.  The

divestitures, whether pursuant to Section IV or Section V of this Final Judgment,

> (1)     shall be made to Acquirers that, in the United States' sole judgment (after
>
> consultation with the State of Connecticut, as appropriate) have the intent
>
> and capability (including the necessary managerial, operational, technical,
>
> and financial capability) of competing effectively in the business of
>
> theatres exhibiting first-run, commercial movies; and
>
> (2)     shall be accomplished so as to satisfy the United States, in its sole
>
> discretion (after consultation with the State of Connecticut, as appropriate)
>
> that none of the terms of any agreement between Acquirers and Defendants
>
> gives Defendants the ability unreasonably to raise the Acquirers' costs, to
>
> lower the Acquirers' efficiency, or otherwise to interfere in the ability of
>
> any Acquirer to compete effectively.

## V.  <u>APPOINTMENT OF TRUSTEE</u>

A.     If Defendants have not divested the Divestiture Assets within the time period

specified in Section IV(A), Defendants shall notify the United States of that fact in writing,

specifically identifying the Divestiture Assets that have not been divested.  Upon application of

the United States, the Court shall appoint a trustee selected by the United States and approved by

the Court to effect the divestitures of the Divestiture Assets.

B.     After the appointment of a trustee becomes effective, only the trustee shall have

the right to sell the Divestiture Assets.  The trustee shall have the power and authority to

accomplish the divestitures to Acquirer(s) acceptable to the United States (after consultation with

8

the State of Connecticut, as appropriate) at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, VI, and VII of this Final Judgment, and shall have such other powers as this Court deems appropriate.  Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee and reasonably necessary in the trustee's judgment to assist in the divestiture(s). Any such investment bankers, attorneys, or other agents shall serve on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.

C.      Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance.  Any such objections by Defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VII.

D.      The trustee shall serve at the cost and expense of Defendants pursuant to a written agreement, on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.  The trustee shall account for all monies derived from the sale of the applicable Divestiture Assets and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services yet unpaid and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Defendants and the trust shall then be terminated.  The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets subject to sale by the trustee and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestitures and the speed with

which they are accomplished, but timeliness is paramount.  If the trustee and Defendants are

unable to reach agreement on the trustee's or any agents' or consultants' compensation or other

terms and conditions of engagement within 14 calendar days of appointment of the trustee, the

United States may, in its sole discretion (after consultation with the State of Connecticut, as

appropriate), take appropriate action, including making a recommendation to the Court.  The

trustee shall, within three (3) business days of hiring any other professionals or agents, provide

written notice of such hiring and the rate of compensation to Defendants and the United States.

E.     Defendants shall use their best efforts to assist the trustee in accomplishing the

required divestitures.  The trustee and any consultants, accountants, attorneys, and other persons

retained by the trustee shall have full and complete access to the personnel, books, records, and

facilities of the assets and business to be divested, and Defendants shall develop financial and

other information relevant to such assets and business as the trustee may reasonably request,

subject to reasonable protection for trade secret or other confidential research, development, or

commercial information or any applicable privileges.  Defendants shall take no action to interfere

with or to impede the trustee's accomplishment of the divestitures.

F.     After its appointment, the trustee shall file monthly reports with the parties and

the Court setting forth the trustee's efforts to accomplish the divestitures ordered under this Final

Judgment.  To the extent such reports contain information that the trustee deems confidential,

such reports shall not be filed in the public docket of the Court.  Such reports shall include the

name, address, and telephone number of each person who, during the preceding month, made an

offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was

contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall

describe in detail each contact with any such person.  The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G.      If the trustee has not accomplished the divestitures ordered under this Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestitures, (2) the reasons, in the trustee's judgment, why the required divestitures have not been accomplished, and (3) the trustee's recommendations.  To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court.  The trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust.  The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

H.      If the United States determines that the trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute trustee.

## VI.  <u>LANDLORD CONSENT</u>

A.      If Defendants are unable to effect any of the divestitures required herein due to the inability to obtain the Landlord Consent for any of the Divestiture Assets, Defendants shall divest alternative theatre assets that compete effectively with the theatre or theatres for which the Landlord Consent was not obtained.  The United States shall, in its sole discretion (after consultation with the State of Connecticut, as appropriate) determine whether such theatre assets compete effectively with the theatres for which Landlord Consent was not obtained.

B.      Within five (5) business days following a determination that Landlord Consent cannot be obtained for any of the Divestiture Assets, Defendants shall notify the United States, and Defendants shall propose an alternative divestiture pursuant to Section VI(A).  The United States (after consultation with the State of Connecticut, as appropriate) shall have then ten (10) business days in which to determine whether such theatre assets are a suitable alternative pursuant to Section VI(A).  If Defendants' selection is deemed not to be a suitable alternative, the United States shall in its sole discretion (after consultation with the State of Connecticut, as appropriate) select alternative theatre assets to be divested from among those theatre(s) that the United States has determined, in its sole discretion, compete effectively with the theatre(s) for which Landlord Consent was not obtained.

C.      If a trustee is responsible for effecting divestiture of the Divestiture Assets, it shall notify the United States and Defendants within five (5) business days following a determination that Landlord Consent cannot be obtained for one or more of the Divestiture Assets.  Defendants shall thereafter have five (5) business days to propose an alternative divestiture pursuant to Section VI(A).  The United States (after consultation with the State of Connecticut, as appropriate) shall then have ten (10) business days to determine whether the proposed theatre assets are a suitable competitive alternative pursuant to Section VI(A).  If Defendants' selection is deemed not to be a suitable competitive alternative, the United States shall in its sole discretion (after consultation with the State of Connecticut, as appropriate) select alternative theatre assets to be divested from among those theatre(s) that the United States has determined, in its sole discretion, compete effectively with the theatre(s) for which Landlord Consent was not obtained.

## VII.  **NOTICE OF PROPOSED DIVESTITURES**

A.      Within two (2) business days following execution of a definitive divestiture

agreement, Defendants or the trustee, whoever is then responsible for effecting the divestitures

required herein, shall notify the United States and, as appropriate, the State of Connecticut, of

any proposed divestitures required by Sections IV, V, or VI of this Final Judgment.  If the trustee

is responsible, it shall similarly notify Defendants.  The notice shall set forth the details of the

proposed divestitures and list the name, address, and telephone number of each person not

previously identified who offered or expressed an interest in or desire to acquire any ownership

interest in the Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice,

the United States, in its sole discretion (after consultation with the State of Connecticut, as

appropriate) may request from Defendants, the proposed Acquirer(s), any other third party, or the

trustee, if applicable, additional information concerning the proposed divestitures, the proposed

Acquirer(s), and any other potential Acquirer(s).  Defendants and the trustee shall furnish any

additional information requested to the United States within fifteen (15) calendar days of receipt

of the request, unless the parties otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20)

calendar days after the United States has been provided the additional information requested

from Defendants, the proposed Acquirer(s), any third party, and the trustee, whichever is later,

the United States shall provide written notice to Defendants, and the trustee, if there is one,

stating whether it objects to the proposed divestitures.  If the United States provides written

notice that it does not object, the divestitures may be consummated, subject only to the

Defendants' limited right to object to the sale under Section V(C) of this Final Judgment.

13

Absent written notice that the United States does not object to the proposed Acquirer(s) or upon

objection by the United States, a divestiture proposed under Section IV or Section V shall not be

consummated.  Upon objection by Defendants under Section V(C), a divestiture proposed under

Section V shall not be consummated unless approved by the Court.

## VIII.  FINANCING

Defendants shall not finance all or any part of any purchase made pursuant to Section IV

or V of this Final Judgment.

## IX.  HOLD SEPARATE

Until the divestitures required by this Final Judgment have been accomplished,

Defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order

entered by this Court.  Defendants shall take no action that would jeopardize the divestitures

ordered by this Court.

## X.  AFFIDAVITS

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and

every thirty (30) calendar days thereafter until the divestitures have been completed under

Sections IV, V, or VI, Defendants shall deliver to the United States an affidavit as to the fact and

manner of its compliance with Sections IV, V, or VI of this Final Judgment.  Each such affidavit

shall include the name, address, and telephone number of each person who, during the preceding

thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered

into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in

the Divestiture Assets, and shall describe in detail each contact with any such person during that

period.  Each such affidavit shall also include a description of the efforts Defendants have taken

to solicit buyers for and complete the sale of the Divestiture Assets, and to provide required

information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Defendants, including limitations on information, shall be made within fourteen (14) calendar days of receipt of each such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions taken and all steps implemented on an ongoing basis to comply with Section IX of this Final Judgment.  Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in their earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.      Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestitures have been completed.

## XI. COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment or of any related orders such as any Hold Separate Stipulation and Order, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

(1)     access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

(2)     to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters.  The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.     Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.     No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, or an authorized representative of the State of Connecticut, as appropriate, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.     If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XII.  NO REACQUISITION

Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XIII.  RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV.  EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

## XV.  PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.


**Date:** March 2, 2016

Court approval subject to procedures
of Antitrust Procedures and Penalties
Act, 15 U.S.C. § 16


_____

**The Honorable Beryl A. Howell**
**United States District Court Judge**

17